IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**JAMIE S. CLAY,**

    **Plaintiff,**

vs.                                                                                **CIVIL ACTION NO. 2:18-CV-00260**

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. By Order entered February 6, 2018 (ECF No. 4), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief in Support of Judgment on the Pleadings and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 12 and 13)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's brief in support of judgment on the pleadings (ECF No. 12), **GRANT** Defendant's request to affirm the decision of the Commissioner (ECF No. 13); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from this Court's docket for the reasons stated *infra*.

**Procedural History**

The Plaintiff, Jamie S. Clay, (hereinafter referred to as "Claimant"), protectively filed her application for Title XVI benefits on March 27, 2014, alleging disability since October 28, 2012, because of "bipolar I w/mixed episodes, PTSD, anxiety, and depression".[1] (Tr. at 212) Her claim was initially denied on October 7, 2014 (Tr. at 107-117) and again upon reconsideration on January 6, 2015. (Tr. at 121-127) Thereafter, Claimant filed a written request for hearing on February 9, 2015. (Tr. at 128-130)

An administrative hearing was held on October 13, 2016 before the Honorable Christina Young Mein, Administrative Law Judge ("ALJ"). (Tr. at 31-57) On November 25, 2016, the ALJ entered an unfavorable decision. (Tr. at 7-23) On January 12, 2017, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 190-193) The ALJ's decision became the final decision of the Commissioner on December 12, 2017 when the Appeals Council denied Claimant's Request. (Tr. at 1-6)

On February 5, 2018, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Commissioner filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 9 and 10.) Subsequently, Claimant filed a Brief in Support of Judgment on the Pleadings (ECF No. 12), and in response, the Commissioner filed a Brief in Support of Defendant's Decision. (ECF No. 13) Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 41 years old when she filed her application for benefits and considered a

---

[1] In her Disability Report – Appeal, submitted on October 27, 2014, Claimant alleged that since September 1, 2014, she started to become "scared to be in car when it's raining" (Tr. at 227), and then since December 5, 2014, she alleged that her "depression is worse, sleeping more often, no appetite." (Tr. at 243)

"younger person" throughout the underlying proceedings. See 20 C.F.R. § 416.963(c). (Tr. at 17) Claimant has a high school education. (Id.) Her work history consisted of employment in clerical fields, such as an insurance clerk, a claims adjuster, a production scheduler. (Tr. at 38-40, 54-55.) She last worked in April 2011 because her husband suffered a detached retina requiring emergency surgery, and he was later diagnosed with pulmonary fibrosis requiring treatment at Cleveland Clinic. (Tr. at 40-41, 212) Claimant's alleged onset date of October 28, 2012 coincides with the date of her husband's suicide. (Tr. at 34, 36)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant

work. Id. § 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." Id. § 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. § 416.920a(c). Those sections provide as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in

> which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 416.920a(d)(2). Finally,

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 416.920a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 416.920a(e)(4).

**Summary of ALJ's Decision**

In this case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the application date of March 27, 2014. (Tr. at 12, Finding No. 1) Under the second inquiry, the ALJ found that Claimant had the following severe impairments: generalized anxiety disorder; bipolar disorder; post-traumatic stress disorder (PTSD); and attention deficit hyperactivity disorder (ADHD). (Id., Finding No. 2) At the third inquiry, the ALJ concluded Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id., Finding No. 3)

The ALJ then found that Claimant had the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels but with the following nonexertional limitations: She can perform simple, routine and repetitive work requiring no independent decision making, changes in the work setting or fast-paced work. She cannot interact with the public but occasionally can interact with coworkers." (Tr. at 14, Finding No. 4)

At step four, the ALJ found Claimant was unable to perform any past relevant work. (Tr. at 17, Finding No. 5) At the final step, the ALJ found that based on Claimant's age, education, work experience, and RFC, and the immateriality of the transferability of job skills, other jobs existed in significant numbers in the national economy that she can perform. (Tr. at 17-18, Finding Nos. 7-9.) Finally, the ALJ determined Claimant had not been under a disability since March 24, 2014. (Tr. at 18, Finding No. 10)

**Claimant's Challenges to the Commissioner's Decision**

Claimant asserts the ALJ erred by failing to consider all of her impairments, specifically with respect to the uncontested evidence that she would miss at least two days per month due to necessary psychiatric medical appointments. (ECF No. 12 at 6) The ALJ found that Claimant was limited to unskilled work, and the vocational expert testified that an individual so limited cannot miss more than one day a month and maintain employment. (Id. at 6-7) Since the ALJ ignored this crucial testimony as well as the voluminous evidence of Claimant's treatments, the unfavorable decision is unsupported by substantial evidence. (Id. at 7) Due to these errors, Claimant asks that the final decision be reversed and that she be awarded benefits, or in the alternative, that this matter be remanded for another hearing before a different ALJ. (Id.)

In response, the Commissioner asserts that the ALJ's decision is supported by substantial evidence and that missing work because of medical appointments is not an appropriate consideration for assessing Claimant's RFC because the Regulations require that only functional limitations resulting from medically determinable impairments shall be considered. See Cherkaoui v. Comm'r of Soc. Sec., 678 F. App'x 902, 904 (11th Cir. 2017); Simpson v. Comm'r of Soc. Sec., 2011 WL 1261499, at *1-2 (D.S.C. Mar. 31, 2011). (ECF No. 13 at 5-6) The Commissioner also

states that Claimant's regularly scheduled outpatient mental health treatment does not preclude sustained work activity, and further, she provided no evidence that these appointments could not be scheduled around work obligations. See, e.g., Hickey v. Berryhill, 2017 WL 4023095, at *4 (D. Md. Sept. 12, 2017); Broom v. Colvin, 2016 WL 397629, at *1 (E.D.N.C. Feb. 1, 2016). (Id. at 7) Another Court in this District recently found that regular, non-emergency medical appointments, without more, does not establish that a claimant would miss one or more days a month from work. See, Bailey v. Berryhill, 2018 WL 2091358, at *23 (S.D.W. Va. Apr. 10, 2018), adopted by, 2018 WL 2090479 (S.D.W. Va. May 4, 2018). (Id. at 8)

The record of evidence did not establish that Claimant's outpatient mental health treatment was incompatible with full-time work activity, and further, no doctor opined that her treatment would be work-preclusive. (Id. at 9) The Commissioner argues that Claimant's regularly scheduled outpatient mental health treatment was unexceptional, and that Claimant did not demonstrate that such treatment was incompatible with substantial gainful activity, and that Claimant provided only speculation that she would miss multiple full or half days of work each month. (Id.) In short, Claimant asks this Court to inappropriately reweigh the evidence and substitute its judgment for the ALJ, however, because the ALJ's decision is supported by substantial evidence, this Court should affirm it. (Id. at 9-10)

**The Relevant Evidence of Record**[3]

The undersigned has considered all evidence of record pertaining to Claimant's arguments and discusses it below.

Prestera Center:

---

[3] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

The record indicates that *since her alleged onset date*, Claimant had 67 treatments for her mental health issues. (Tr. at 326-613, 718-764, 957-1000) This included a one-night psychiatric hospitalization in June 2013 that preceded the relevant period. (Tr. at 341) However, *during the relevant period*, Claimant attended outpatient psychotherapy once or twice a month: one in April 2014 (Tr. at 358); two in May 2014 (Tr. at 359, 360); one in June 2014 (Tr. at 362); two in July 2014 (Tr. at 364, 491); two in August 2014 (Tr. at 492, 493); two in September 2014 (Tr. at 494, 496); two in October 2014 (Tr. at 497, 498); one in November 2014 (Tr. at 533); two in December 2014 (Tr. at 536, 539); two in January 2015 (Tr. at 542, 545); two in February 2015 (Tr. at 957, 960); one in March 2015 (Tr. at 963); two in April 2015 (Tr. at 966, 969); one in May 2015 (Tr. at 972); one in June 2015 (Tr. at 975); two in July 2015 (Tr. at 977, 980); one in August 2015 (Tr. at 983); one in September 2015 (Tr. at 986); one in October 2015 (Tr. at 989); one in November 2015 (Tr. at 992); one in March 2016 (Tr. at 995); two in April 2016 (Tr. at 998, 1001); two in May 2016 (Tr. at 1004, 1007); two in June 2016 (Tr. at 1010, 1013); one in July 2016 (Tr. at 1016); and two in August 2016. (Tr. at 1019, 1022)

In addition to her outpatient therapy sessions, Claimant attended outpatient medication management with a psychiatrist: the record shows that between April 2014 and August 2016, Claimant had 20 of these medication management sessions. (Tr. at 450, 455, 460, 500, 505, 510, 600, 1025, 1031, 1037, 1037, 828, 834, 834, 840, 846, 1061, 852, 858, 864, 1085, 1091)

During the relevant period, the record demonstrates that Claimant did not require inpatient psychiatric care or emergency room visits due to psychiatric symptoms. A "Session Information" outpatient therapy note dated August 9, 2016 provides: "[Claimant] and ex are back together – reports that this is going well" and that she "[s]tarted applying for jobs. Had an interview Thursday

but hoping that she doesn't get this because she is now having medical issues and also has a court date for disability. [C]onfused about what to do about this." (Tr. at 1020)[4]

**The Administrative Hearing**

Claimant Testimony:

All of Claimant's medical and therapeutic treatments were at the Prestera Center in Charleston, West Virginia. (Tr. at 46) Claimant undergoes both psychiatric treatment with a medical doctor, and in-depth talk therapy with a therapist. (Tr. at 46-47) Claimant testified that her counseling sessions last about an hour, and her visits with the psychiatrist last about 15-20 minutes. (Tr. at 47) She stated that it takes her about 30 minutes to get to her counseling sessions, however between traveling or waiting for her counseling sessions, she testified that it takes anywhere from two to two and half hours of her time. (Id.) For visits with her psychiatrist, between traveling and waiting, it takes two hours of her time. (Tr. at 48)

She testified that she sees the psychiatrist once every three months. (Tr. at 47)

Claimant testified that she typically experiences daily panic attacks that can last from thirty minutes to an hour; she described her panic attacks as "very painful" and that her heart "will either go really, really fast, or it hurts" and that she cannot breathe or think. (Tr. at 48) She takes Klonopin to assist in arresting the panic attacks. (Id.) The panic attacks can be triggered by anything, or nothing at all, however, being around other people causes an uptick in her panic attacks. (Tr. at 49)

Aimee Spinelli, Vocational Expert ("VE") Testimony:

The VE testified that a hypothetical individual of Claimant's age, education and work

---

[4] The undersigned notes that the report from this session date also references that on August 7, 2015 that Claimant "[r]eports wanting to go back to school or into the workforce. Wants to be more independent." (Tr. at 1019)

experience, who could perform exertional work at least at the light level, and could perform simple routine repetitive tasks requiring no independent decision making, no changes in the work setting and no fast-paced work, defined as low stress needed, and no public interactions and only occasional interaction with co-workers, could not perform Claimant's past relevant work. (Tr. at 55)

However, the VE testified that the hypothetical individual could work as a mail room clerk, laundry worker, or routing clerk. (Id.)

In response to questioning by Claimant's attorney, the VE testified that if the hypothetical individual were to be off work two and a half days monthly due to scheduled medical treatments and would be off work for at least a half day for those two and a half days, then the individual would be precluded from all competitive employment. (Tr. at 56) The VE specified that anything over one day per month would be excessive absenteeism in the unskilled field. (Id.)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th

Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

As stated above, the primary argument here is whether the ALJ erred by not taking into consideration Claimant's frequent regularly scheduled mental health treatment sessions in the RFC assessment.

A claimant's RFC represents the *most* that the individual can do despite her limitations or restrictions. See Social Security Ruling 96-8p, 1996 WL 3744184, at *1 (emphasis in original). The Regulations provide that an ALJ must consider all relevant evidence as well as consider a claimant's ability to meet the physical, mental, sensory and other demands of any job; this assessment is used for the basis for determining the particular types of work a claimant may be able to do despite her impairments. 20 C.F.R. § 416.945(a). The RFC determination is an issue reserved to the Commissioner. Id. § 416.927(d).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physician's opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

It is well known that in order for a vocational expert's opinion to be relevant or helpful, it must be based on all other evidence in the record and responsive to a proper hypothetical question that fairly sets out all of a claimant's impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.

1989) (internal citations omitted). It is also well known that a hypothetical question is "unimpeachable if it adequately reflects a residual functional capacity for which the ALJ had sufficient evidence." Fisher v. Barnhart, 181 Fed. App'x 359, 364 (4th Cir. 2006) (citing Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005). In this case, though Claimant provided testimony concerning her time spent traveling and waiting as well as the frequency and the duration of her regularly scheduled outpatient therapy and medication management sessions, there is no evidence in the record that indicated Claimant would miss more than one day of work as a result of these regularly scheduled appointments. Claimant's alleged limitation "that she would miss work frequently due to medical appointments - is not the kind of limitation contemplated by 20 C.F.R. § 416.921[.]" See, Simpson v. Comm'r of Soc. Sec., 2011 WL 1261499, at *2 (D.S.C. Mar. 31, 2011).

Moreover, there is no evidence that these appointments could not be scheduled around a work schedule. As pointed out by the Commissioner, this District previously recognized in Bailey v. Berryhill, 2018 WL 2091358, at *23, *supra*, "[t]his is not a case in which Claimant suffered unforeseen medical emergencies or complications. Rather, Claimant had regularly scheduled appointments for maintenance of her chronic conditions." Indeed, as noted by the Commissioner, there is no doctor or therapist opinion that Claimant should not work at all or would miss more than one day of work due to her regularly scheduled appointments. Id., (citing, Peters v. Astrue, No. CIV.A. 1:08-CV-203, 2009 WL 6326804, at *11 (N.D.W. Va. Sept. 29, 2009), report and recommendation adopted sub nom. Peters v. Comm'r of Soc. Sec. Admin., 2010 WL 1369245 (N.D.W. Va. Mar. 31, 2010) ("However, no doctor opined that Plaintiff is unable to work because of numerous doctor appointments. Plaintiff does not rely on a medical opinion that she is unable

13

to work due to frequent absenteeism, but instead she presents her history of appointments in support of her argument . . . In addition, the majority of Plaintiff's appointments would not require her to miss a full day of work.") The undersigned notes that even after an emergency room visit on December 4 – 5, 2015, a "Certificate for Return to School/Work/Other" notes that Claimant could return to work by December 6, 2015. (Tr. at 642)

In short, Claimant's contention that she would miss more than one day of work a month due to her numerous regularly scheduled appointments is speculative at best, especially in light of the fact that she was not working since or before she began seeing a therapist and psychiatrist on a regular basis. Accordingly, the undersigned **FINDS** that the hypothetical question posed to the vocational expert is supported by substantial evidence, that the ALJ's findings at the fourth and fifth steps in the sequential evaluation are supported by the substantial evidence, and ultimately, the decision finding Claimant was not under a disability since her application date is supported by the substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for judgment on the pleadings (ECF No. 12), **GRANT** the Defendant's request to affirm the decision below (ECF No. 13), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B),

and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Copenhaver, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: July 2, 2018.

_____
Omar J. Aboulhosn
United States Magistrate Judge